11 cv. 7098

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Alex Rudaj,

    Plaintiff

       v.

Treanor, Timothy
Rodgers, Jennifer
Grustein, Benjamin
Cote, Denise L.
Falsone, Richard
Breslin, Michael
Dermberger, Richard
Gallego, Dennis
Kousouros, James
Garcia, Michael J.
Bischoff, Christina Paglia
Kelley, David N.
Feinberg, Wilfred
Miner, Roger
Parker, Barrington
Bharara, Prett
Koladner, Johnathan
Levin, Sharon Cohen
Katehis, John
and others known and unknown,

    Defendants.

Civil Action No. _____

JURY TRIAL DEMANDED

### A CIVIL RIGHTS LAWSUIT UNDER BIVENS

NOW COMES Plaintiff Alex Rudaj, a pro se litigant filing the instant Bivins Lawsuit (42 U.S.C. § 1983) against the above named defendants. Plaintiff's constitutional rights were violated during the investigation and court proceedings of his criminal offense in the New York City Metropolitan area, under Case Number 04-CR-110 (DLC), tried in the United States District Court for the Southern District of New York.

PARTIES IN LAWSUIT


Plaintiff: Alex Rudaj, Reg No. 02381-748, 5756 Hartford & Pointville Rd.
          FCI Ft Dix, P.O. Box 2000, Fort Dix, NJ 08640

Defendants:

   1) Treanor, Timothy; Assistant United States Attorney for
      the Southern District of New York (SDNY), 500 Pearl St,
      New York, NY 10007. He is the Government Attorney-In-
      charge of criminal prosecutions, including Plaintiff's
      Trial. He granted permission to the federal agents, who
      at the time of Plaintiff's arrest, to conduct a
      warrantless search of Plaintiff's home. He is sued in
      his individual and official capacities.

   2) Rodgers, Jennifer; Assistant U.S. Attorney, SDNY, one
      of the government's lawyers who tried Plaintiff. She is
      sued in her individual and official capacities.

   3) Gruestein, Benjamin; A.U.S.A. for SDNY; he assisted the
      prosecution of Plaintiff. He is sued in his individual
      and official capacities.

   4) Cote, Denise L.; District Judge for SDNY. She presided
      over Plaintiff's trial and imposed a 27-year prison
      term. She is being sued in her individual and official
      capacities.

   5) Falsone, Richard; FBI Agent; he was part of the
      warrantless search of Plaintiff's home. He is sued in
      his individual and official capacities.

   6) Breslin, Michael; FBI Agent; he was an integral part of
      the warrantless search of Plaintiff's home. He is sued
      in his individual and official capacities.

   7) Dermberger, Richard; FBI Agent; he was part of the
      warrantless search of Plaintiff's home. He is sued in
      his individual and official capacities.

   8) Gallego, Dennis; Agent for NYC Task Force of the NYC
      Police Dept.; he participated in the warrantless search
      of Plaintiff's home. He is sued in his individual and
      official capacities.

   9) Kousouros, James; Plaintiff's trial counsel. He represented
      Plaintiff at trial and sentencing. He is sued in his
      individual and official capacities.

10) Garcia, Michael J.; A.U.S.A. for SDNY; Government
Attorney-In-Charge of Trials and Appeals, including
Plaintiff's case. He is sued in his individual and
official capacities.

11) Bischoff, Christina Paglia; A.U.S.A. for SDNY;
Participated in Plaintiff's trial. She is sued in her
individual and official capacities.

12) Kelley, David N.; United States Attorney for SDNY; during
Plaintiff's proceedings, he retired and was succeeded
by Bharara. He is responsible for all federal prosecutions
in the district. He is sued in his individual and official
capacities.

13) Feinberg, Wilfred; One of three Second Circuit Appellate
judges who affirmed Plaintiff's judgment and conviction
from SDNY. He is sued in his individual and official
capacities.

14) Miner, Roger; One of three Second Circuit Appellate
judges who affirmed Plaintiff's judgment and conviction
from SDNY. He is sued in his individual and official
capacities.

15) Parker, Barrington; One of three Second Circuit Appellate
judges who affirmed Plaintiff's judgment and conviction
from SDNY. He is sued in his individual and official
capacities.

16) Bharara, Prett; United States Attorney for SDNY; he
succeeded Kelley during Plaintiff's proceedings. He is
sued in his individual and official capacities.

17) Koladner, Johnathan; Prosecutor for the Second Circuit
Appellate Court. He was the Government's lawyer for the
Plaintiff's appeal. He is sued in his individual and
official capacities.

18) Levin, Sharon Cohen; A.U.S.A. for Plaintiff's appeal.
She is sued in her individual and official capacities.

19) Katehis, John; Detective for the New York City Police
Department. He is sued in his individual and official
capacities.

# JURISDICTION

This Court has jurisdiction over Plaintiff's federal civil rights claims pursuant to Title 28 U.S.C. § 1331 and 1343(a)(3). Section 1331 covers all federal constitutional and statutory claims; where as, § 1343(a)(3) covers only federal constitutional claims.

Considering that Plaintiff's Fourth, Fifth, and Sixth Amendment rights were violated, this Court has subject matter jurisdiction over his claim. The Second Circuit Appellate Court, in **Polanco v. United States,** 158 F.3d 647, 651 (10-15-98), held:

> Subject matter jurisdiction over this claim is found in 28 U.S.C. § 1331, the general federal question statute, because the complaint alleges a violation of Appellant's Fifth Amendment right to Due Process of Law.

In the instant case, Plaintiff has cited several federal questions in regard to his constitutional rights having been violated.

This Court also has jurisdiction under 28 U.S.C. § 1332; Plaintiff lives in New Jersey and most defendants live in New York. Title 28 U.S.C. § 1332(a) states:

"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between:

> (1) Citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> (4) a foreign state, defined in section 1603(a) of this title 28 USCS § 1603(a), as plaintiff and citizens of a State or of different States.

For the purpose of this 28 USCS § 1335, and 28 USCS § 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled."

## VENUE

This Court is an appropriate venue under Title 28 U.S.C §
1391(b)(2) because a substantial part of the events giving rise to
the claims herein occurred in this district. Section 1391(b)(2)
states:

> A civil action wherein jurisdiction is not founded soley
> on diversity of citizenship may, except as otherwise
> provided by law, be brought only in (1) a judicial district
> where any defendant resides, if all defendants reside in
> the same State (2) a judicial district in which a
> substantial part of the events or omissions giving rise to
> the claim occurred, or a substantial part of property that
> is the subject of the action is situated, or (3) a judicial
> district in which any defendant may be found, if there is
> no district in which the action may otherwise be brought.

In **Gonzalez v. Hasty**, 2011 U.S. App. Lexis 12065 (2nd Cir.
6-21-11), the court held:

> In a Bivens action, venue is governed by 28 U.S.C. § 1391(b),
> which provides that where **jurisdiction** is not founded on
> diversity of citizenship, a civil action may be brought
> only in "a judicial district in which a substantial part
> of the events or omissions giving rise to the claim occurred."

## THE TRIAL COURT AND GOVERNMENT AGENTS
## VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHTS
## FOR REFUSING TO SEVER NUCULOVIC FROM TRIAL

The Government refused to sever co-defendant Ljusa Nuculovic from Plaintiff's trial. But the Government brought, to trial, Nuculovic's statements through FBI Agent Falsone's testimony. By doing so, prosecutor Jennifer Rodgers and the Honorable Denise Cote clearly violated Plaintiff's right to confront his accuser under confrontation clause of the Sixth Amendment.

Ms. Rodgers continues to violate Plaintiff's Sixth Amendment right when she states in her closing argument: "Nuculovic's ... because he told Agent Falsone we all had guns ... these are Nuculovic's own words ..." (Tr. P. 9312, Ln. 2-9). In effect, by using Rodgers' closing statement to bring in otherwise hearsay evidence, Judge Cote's refusal to sever Nuculovic prevented Plaintiff from cross-examining Nuculovic. Not only was Plaintiff's Sixth Amendment right violated, but his Fifth Amendment Due Process right to a fair trial was violated.

In **United States v. Santos**, 449 F.3d 93, 95, (2nd Cir. 2006), the Second Circuit held that the Confrontation Clause of the United States Constitution was violated by admission of nontestifying co-defendant's statement where defendant did not have the opportunity to cross examine him.

In a similar case, the Second Circuit ruled that a "detective's testimony implying that co-conspirators had told detective that defendant was his supplier was not admitted for valid, non-hearsay

purpose, and thus, it was inadmissible hearsay." **United States v. Gomez**, 617 F.3d 88 (2nd Cir. 2010).

The Supreme Court in **Crawford v. Washington**, 158 L.Ed.2d 177 (2004) held that the admission of so called "testimonial hearsay" (i.e. police interrogation is not in response to an ongoing emergency as in the instant case), violates the Confrontation Clause of the Sixth Amendment unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant.

Had Trial Counsel (James Kousouros) petitioned the Court to sever Nuculovic from Plaintiff's Trial, then Counsel would have had authority to subpoena Nuculovic and cross-examine him at Trial. Severance should have been granted if there was a risk that a joint trial would compromise a specific trial right of one of the defendants, or prevented the jury from making a reliable judgment about guilt or innocence. **Zafiro v. United States**, 122 L.Ed 317 (1993).

In **United States v. Feyrer**, 333 F.3d 110, 114 (2nd Cir. 2003), the Second Circuit ruled "The risk of prejudice associated with joinder varies with the facts of each case. A trail court is most likely to grant a severance under Rule 14 in situations where the risk of prejudice is high."

In this case, both the Government and the Court (i.e. Judge Cote) were aware of the fact that Nuculovic had made statements about Plaintiff's overt acts to FBI Agent Falsone, and that Agent Falsone was on the Government's witness list and would likely testify about the statements made to him about the Plaintiff.

By failing to sever Nuculovic's Trail from that of the Plaintiff, the Court allowed Nuculovic's hearsay testimony into Trial without the Plaintiff being able  to cross examine him, thereby violating the Plaintiff's Sixth Amendment right to confront his accusers before his trial even began.

Federal Criminal Rule of Procedures 14 specifically requires just this type of "relief from Prejudicial Joinder".

> If the joinder of offenses or defendant in an indictment, an informant, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires. (Emphasis added).

As the added emphasis illustrates, all that is required for the Court to order relief, is the appearance of prejudice, such as obviously existed in the instant case.

Judge Cote clearly prejudiced the Plaintiff and abused her discretion for failing to sever Nuculovic which significantly contributed to Plaintiff's guilty verdict and 27 year prison term.

The actions of Judge Cote, A.U.S.A. Rodgers and attorney Kousouros violated Plaintiff's civil rights under Title 28 U.S.C. §§ 242 and 1343 which warrants an actionable Bivens lawsuit.

Contributing to the violation of Plaintiff's civil rights were United States Attorneys  Kelley and Bharara.

## PLAINTIFF'S FOURTH AMENDMENT
## RIGHT WAS VIOLATED

Plaintiff asserts his Fourth Amendment right was violated when his home was searched without a search warrant. The early morning search simultaneously occurred with his arrest. U.S. Attorneys and all the agents involved with the search are equally responsible for violating Plaintiff's civil rights under 28 U.S.C. §§ 242 and 1343, and 42 U.S.C. § 1983. **Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics**, 403 U.S. 388, 396-97 (1971) (individual entitled to sue federal agents for monetary damages because agents searched house without probable cause or warrant in violation of Fourth Amendment).

Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Plaintiff adamantly asserts that the Government lacked probable cause to conduct a warrantless thorough search of his home, seizing his rifles for which he had a lawful license.

To establish probable cause for a warrantless search, the agents must know a crime is being committed and/or there is dangerous contraband in the house. **Kirk v. Louisiana**, 153 L.Ed.2d 599 (2002). In another Supreme Court case, **Aguilar v. Texas**, 12 L.Ed.2d 723, 729 (1964), the Court ruled probable cause must be based on facts and circumstances within officer's knowledge and reasonable trustworthy information sufficient to cause a prudent person in believing a defendant had committed or was committing an offense.

A search incident to a valid arrest does not justify a search of the entire arrestee's home, as was done in the instant case. **Chimel v. California**, 23 L.Ed.2d 685 (1969) (Police may not conduct full-blown search of entire house under incident to arrest exception). The agents may conduct a protective sweep which may entail a cursory inspection of those spaces in which a person may be found and cannot last longer than is reasonably necessary to dispel suspicion of danger. **United States v. Miller**, 430 F.#d 83, 101-02 (2nd Cir.). Based on the Standard set fourth by the **Miller** Court (Id.), the search of Plaintiff's bedroom closet was unreasonable.

The agents search of Plaintiff's home was more thorough than a cursory inspection. After they secured all residents in a central area of Plaintiff's home, they searched the marital bedroom where they seized lawfully owned hunting rifles from the closet. There is no evidence that these rifles, which were not in plain view, were used in Plaintiff's overt acts.

Under the plain view doctrine, police may seize evidence that is in plain view without a warrant. Also police may lawfully seize

-10-

evidence in plain view when executing an arrest warrant. **Bradway v. Gonzales,** 26 F.3d 313, 319-20 (2nd Cir. 1994) (plain view of stolen goods valid, goods were very visible when officers arrested defendant). The U.S. Supreme Court ruled in **Minnesota v. Dickerson,** 124 L.Ed.2d 334 (1993):

> Under the plain view doctrine, if police are lawfully in a position from which they view an object if its incriminating character is immediately apparent, and if officers have a lawful right of access to the object, they may seize it without a warrant.

Another avenue agents may permissibly seize contraband without a warrant is if exigent circumstances exist. Agents must prove there is probable cause for the seizure and the evidence sought is in imminent danger of destruction or the general public is threatened. **Cortez v. McCauley,** 478 F.3d 1108, 1124 (2nd Cir. 2007) (Warrantless entry not justified by exigent circumstances because suspect was asleep when officers arrived, suspect cooperated with officers and officers had no reason to suspect that potential victims were in house).

In the instant case, exigent circumstances were non-existent. The police entered Plaintiff's family home, could easily see the family was very distraught, and a quick protective sweep determined there was not any danger. A reasonable trier of fact would easily deem, after reviewing the totality of circumstances, that the evidence sought was not in imminent danger of destruction and the general public was not threatened by anything in Plaintiff's home.

Defendants responsible for violating Plaintiff's Fourth Amendment right are: U.S. Attorneys Bharara and Kelley, A.U.S.A. Rodgers, A.U.S.A. Treanor, FBI Agent Falsone, FBI Agent Breslin, FBI Agent Dermberger, N.Y.C. Task Force Agent Gallego, and defense Attorney Kousouros. Shortly after the agents were in Plaintiff's home, they called the A.U.S.A. Treanor who gave them the "green light" to search the home. Rodgers and Treanor are responsible for convincing the jury said search was permissable and evidence seized was allowable in trial. Bharara and Kelley are held responsible as they are Rodgers' and treanor's supervisors who must approve their subordinates work. FBI agents and N.Y.C. Agent Gallego are responsible for the manner in which they unlawfully searched Plaintiff's home. Mr. Kousouros was responsible for his ineffectiveness at trial to raise a reasonable doubt with the jury and for failure to suppress the evidence seized from Petitioner's home.

Additional responsible defendants are the three Second Circuit Court judges: Wilfred Feinberg, Roger Miner, and Barrington D. Parker. These judges affirmed the district court's judgment and conviction, despite citing flaws in the warrantless search of Plaintiff's home.

The Plaintiff further suffered another Fourth Amendment violation when law enforcement agents searched Skutarija's building on 3316 23rd Avenue, Astoria, Queens, New York. Said violation resulted from the warrantless search of a shed situated behind said building.

This search was executed pursuant to a search warrant, particularly describing the place to be searched, under oath or affirmation. The government lawyers used the information concerning this search by local authorities as evidence in Plaintiff's trial, to prove violations of RICO, 18 U.S.C. 1961, and firearms, 18 U.S.C. § 924(c). The Government lawyers presented as evidence to this end guns that were alleged to have been found on this property. To support the physical evidence of the alleged guns, the government lawyers presented Detective John Katehis, who testified at length concerning said search. See Tr.p. 5755-5763, Tr.p. 5802-5815.

The defense counsel requested the copy of the search warrant that was issued for that date. There was no doubt that it existed. However, it was not provided to the defense lawyers. See Tr.p. 376, ln. 5-6 ("we did not receive ... any search warrants ... with regards to this evidence.")

Plaintiff asserts the government failed to provide the warrant because it did not mention, nor describe the shed to be searched which is behind Skutarija's building. The shed was not and is not part of the building mentioned and described in the search warrant. Also, of paramount importance is the fact that there was no one to witness the search of the shed, where the guns were allegedly found and seized.

Exhibit #1 of Plaintiff's § 2255 petition shows the building, the shed, and the two point attack on the Skutarija building from the front and the rear simultaneously. Then, there are satellite pictures from Google Maps, that depict the front of the Skutarija

building from two angles, overhead views that show the main building and the shed. Attached to these are also photos taken from various angles showing the main building and the walk between the building and the shed.

These photos are important evidence which conclusively demonstrate the government lawyers knowingly, and purposely withheld **Brady** and **Giglio** material in order to present perjured testimony to the jury to obtain a conviction.

The government lawyers presented pictures showing from where the guns were allegedly found and seized, and had the detective explain and testify to these pictures. But, the pictures showing the actual place the guns were allegedly found were pictures of the inside of this shed in back of the Skutarija building. But, when asked, Detective John Katehis testifies:

> **"No, that's the third room. Its not the shed."**
> Tr.P. 5806, ln.17.

Also, the government lawyers failed to provide the fingerprint analysis for the guns found in the shed behind the Skutarija building. This was obviously because the results conclusively show there were no fingerprints belonging to Plaintiff on the guns.

Clearly, this warrantless search violated Plaintiff's Fourth Amendment right, not to mention the government's withheld evidence, as stated above, violated Plaintiff's Fifth Amendment right to Due Process.

### PROSECUTORIAL MISCONDUCT VIOLATED PLAINTIFF'S
### DUE PROCESS OF LAW RIGHTS UNDER THE FIFTH AMENDMENT

At his criminal trial, the Plaintiff's due process rights were violated by the prosecutors: U.S. Attorney Prett Bharara, A.U.S.A. Rodgers and A.U.S.A. Treanor. Prosecutorial misconduct that caused said violation is listed below:

1) Knowingly using false testimony.
2) Illegal authorization of preplanned search and seizure.
3) Knowingly and intentionally withheld exculpatory evidence.
4) endorsement of known perjury in summations.

Prosecutorial misconduct requires proof of improper conduct by the prosecutor that, taken in the context of a trial as a whole, violated the defendant's due process rights. **United States v. Flaharty**, 295 F.3d 182, 202 (2nd Cir. 2002) (Court considered whether prosecutor's remarks were improper and whether remarks infected trial with unfairness violating defendant's due process rights).

As well explained in Petitioner's § 2255 Motion, pages 5-14 and 6(vii) - 6(ix), the Government knew some of their witnesses committed perjury and were uncredible. For example, Sanginiti was a known liar and perjurer, Tr. p. 1304, Ln. 6-7, admits to lying under oath, Tr. p. 1305, Ln. 19-20, and admits he was not truthful with the Government at his initial meetings. See Exhibit A.

A prosecutor may not knowingly present false testimony and has a duty to correct testimony that he or she knows is false. **Shih Wei Su v. Filion**, 335 F.3d 119, 127-30 (2nd Cir. 2003) (prosecutor's

failure to correct government witness's false testimony and subsequent attempt to bolster witness's credibility improperly violated due process).

When the Government obtains a conviction through the knowing use of false testimony, it violates the defendant's due process rights. **Napue v. Illinois,** 3 L.Ed.2d 1217 (1959); **United States v. Bagley,** 87 L.Ed.2d 481 (1984).

Had the defense team been given all evidence, they would have discovered perjury before trial. But, when Plaintiff became aware of witness's perjury at trial, trial counsel Kousouros should have either motioned for a new trial or subsequently motioned for the conviction to be set aside. In **United States v. Wallach,** 935 F.2d 445, 456 (2nd Cir. 1991), the Court held:

> Whether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict and the extent to which the prosecution was aware of perjury. With respect to this latter inquiry, there are two discrete standards of review that are utilized. Where the prosecution knew or should have known of the perjury, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Indeed, if it is established that the government knowingly permitted the introduction of false testimony reversal is virtually automatic. Where the government was unaware of a witnesses' perjury, however, a new trial is warranted only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted. The test is whether there was a significant chance that this added item, developed by skilled counsel could have induced a reasonable doubt in the minds of enough of the jurors to avoid a conviction. (Internal citations omitted).

For details on witness's perjury, see Petitioner's § 2255 motion, pages 6(vii) - 6(ix) and pages 5-14. Exhibit A. Worthy of note is how Government witness Balampanis perjured himself, Page 6(ix).

Another blatant example of perjury is from the Government's star witness, Sanginiti who also admits he was not truthful with the Government at their initial meetings.

A motion for a new trial based on newly discovered evidence of perjury is granted only if required in the interest of justice. In **United States v. White**, 972 F.2d 16, 20-21 (2nd Cir. 1992), the Second Circuit enumerated the principles that have been established for making this determination:

First, the motion will not be granted unless the "newly discovered evidence" could not with due diligence have been discovered before or during trial. Although the District Court held that the defendant did not meet this requirement, we do not rest our decision on that ground. Because there was no evidentiary hearing, the record does not show the circumstances under which Mincey's affidavit was obtained. (Mincey was the source of the newly discovered information).

Second, when the newly discovered evidence focuses on the perjury of a witness, a threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury. The District Court observed the perjury was "by no means established or shown even to be likely." The Government argues that White failed to demonstrate that Smith (the Government's principal witness) in fact committed perjury, there being other evidence which contradicted Mincey's generalized accusation. We do not rest our decision on this point, however, the record being insufficient to establish that Mincey's affidavit is unworthy of belief. The District Court assumed that Smith perjured himself with respect to his drug use. We will do the same.

Third, the newly discovered evidence must be material. Whether the introduction of perjured testimony requires a new trial depends on the materiality of the perjury to the jury's verdict. The credibility of a witness who testifies as to substantive facts is critical in the trial of a case. To this extent, it cannot be said that evidence that would show the witness to be lying is immaterial.

Fourth, consideration must also be given to whether the newly discovered evidence is cumulative, that is simply additional evidence to that which was presented at trial as to a fact, or unique evidence that tends to prove a fact at issue. (Internal citations omitted).

When reviewing a claim for prosecutorial misconduct, courts review the claim to determine whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. **United States v. Morsley**, 64 F.3d 907, 913 (2nd Cir. 2005). The test for reversible prosecutorial misconduct has two components; first, the defendant must show that the prosecutor's remarks or conduct were improper and, second, the defendant must show that such remarks or conduct so sufficiently prejudiced his substantial rights that he was deprived of a fair trial; **United States v. Mitchell**, 1 F.3d 235, 240 (2nd Cir. 2003). Certainly, in the instant case, the prosecutor's remarks and conduct, cited above, meet the **Mitchell** Court's two components.

In evaluating the question of prejudice, courts have noted that a number of factors are relevant namely: (1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) absent remarks, the strength of competent proof introduced to establish the guilt of the defendant; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense attorney; and (6) whether curative instructions were given to the jury. **United States v. Wilson**, 135 F.3d 291, 299 (2nd Cir. 2003). In the case at bar, the Plaintiff adamantly asserts that prosecution met all six factors cited in the **Wilson** Court, refer to the aforementioned citations from Plaintiff's trial.

Plaintiff contends that the instant prosecutorial misconduct so infected his trial with unfairness and prejudice that the jury's conviction was a denial of due process, a Fifth Amendment violation.

Defendants who were responsible, for the aforementioned violation of Plaintiff's Due Process rights are: U.S. Attorneys Bharara and Kelley, A.U.S.A. Rodgers, A.U.S.A. Treanor, District Judge Cote, Plaintiff's Attorney Kousouros, and Second Circuit Judges Parker, Miner and Feinburg; A.U.S.A. Rodgers and Treanor who elicited false testimonies, Judge Cote who allowed the Government to do so, Attorney Kousouros who failed to prevent such testimony, and the Second Circuit judges who ignored said testimony in their ruling.

## PLAINTIFF'S FIFTH AMENDMENT RIGHT WAS VIOLATED
## WHEN HE WAS CONVICTED OF A FIREARMS OFFENSE

Considering the prosecutors Rodgers and Treanor used perjured testimony and lawfully owned rifles to convict Plaintiff on a firearms offense, Plaintiff's seven year prison term, for this conviction, was a violation of his right to Due Process of Law under the Fifth Amendment. No person shall be deprived of life, liberty or property without Due Process of Law.

Defendants A.U.S.A. Rodgers, A.U.S.A. Treanor and U.S. Attorneys Bharara and Kelley are responsible for Plaintiff's deprivation of liberty for allowing his hunting rifles into evidence at the trial, then informing the jury that they were an integral part of Plaintiff's crime. Contrarily, there is no evidence said rifles were used in Plaintiff's crimes, instead there were handguns allegedly used in his crime.

Judge Cote must share the responsibility for Plaintiff's deprivation of liberty, she allowed the hunting rifles into evidence at trial which prejudiced Plaintiff.

Plaintiff's attorney, Kousouros, is also responsible for Plaintiff's loss of liberty, he was ineffective for failing to suppress the hunting rifles evidence.

To prove a § 924(c) violation, the United States Supreme Court in **United States v. Rodriquez**, 143 L.Ed.2d 388 (1999) held:

> Government is required to show that the defendant (1) used a firearm, (2) committed all acts necessary to be subject to punishment for a crime of violence, and (3) used a gun during and in relation to the instant crime.

Applying the holding of the **Rodriquez** Court (Id.) to the instant case, Plaintiff asserts that the contradictory testimonies of the known perjurers, did not clearly prove his § 924(c) offense. This testimony was not corroborated by credible witnesses, and therefore the Government has failed to prove beyond a reasonable doubt that Petitioner violated § 924(c). Under the Due Process Clause of the Fifth Amendment, the prosecutor is required to prove beyond a reasonable doubt every element of a defendant's charged crime. **Windship v. United States**, 25 L.Ed.2d 368 (1970). In Plaintiff's criminal case, the prosecutors failed to prove the § 924(c) offense.

The Second Circuit has ruled on reasonable doubt and sufficiency of evidence for a § 924(c) conviction. In **United States v. Elder**, 88 F.3d 127 (CA-2, 1996), the Court held:

> Where defendant used by firing, aiming, brandishing, or verbally threatening to fire it in connection with violent crime that was goal of conspiracy; and this evidence was corroborated by credible witnesses, the defendant's conviction of a § 924(c)(1)(A) offense is affirmed. (Emphasis added).

The Plaintiff must be acquitted if the Government fails to meet its burden of proof. **United States v. Novak**, 443 F.3d 150, 159 (2nd Cir. 2006) (Prosectuion's failure to prove beyond a reasonable doubt that defendant had intent to harm required reversal of conviction).

In the instant case, the Government's entire basis for the § 924(c) offense, is the testimony of known perjurers who gave conflicting statements to the authorities.  This testimony coupled with what can only be described as intentionally misleading statements by A.U.S.A. Rodgers, clearly led to the Jury's finding that the Petitioner was guilty of violating § 924(c) and thus violating his Due Process Rights.

In her summation to the jury, A.U.S.A. Rodgers correctly stated that:

> Here the defendants are charged with using and carrying a firearm during and/or possessing a firearm in furtherance of a crime of violence.  (Tr. p. 9318, lines 3-4).

However, in the Plaintiff's case, the "firearm" in question was a handgun.  However, based on the following statement also made during A.U.S.A. Rodgers' summation, a reasonable person would assume that the Petitioner had been accused of using rifles to commit these alleged crimes.

> You saw rifles come in evidence...from Alex Rudaj's home... Those are the tools of their violence (Tr. P. 9194, lines 1-14).

There is no evidence whatsoever to link these rifles with any crime of violence.  Nor was there any mention that the rifles in question were properly registered to the Plaintiff.   These facts apparently made no difference to A.U.S.A. Rodgers who goes on to state:

> There was plenty of evidence of guns found in Alex Rudaj's home.  These were mostly rifles... (Tr. p. 9318, lines 3-4).

This statement is just plain wrong.  The guns found in the Petitioner's home, were not "mostly rifles" (a statement which clearly implies that there were other guns found in the home), but were in in fact **ONLY** rifles.

A.U.S.A. Rodgers then admits that the Government has not proven its obligation to prove beyond a reasonable doubt every element of the purported § 924(c) violation, when she admits in the following statement that the Government has failed to locate the handgun purportedly used by the Plaintiff:

> And also don't forget that although there were no handguns found in Rudaj's closet...

A.U.S.A. Rodgers then concludes this statement by once again attempting to tie in the legally owned rifles (which were not even allegedly used in the purported crimes) with partial boxes of ammo which somehow evidenced the existence of the missing, and possibly non-existent handguns:

> ...along with the rifles, there were partial boxes of handgun ammunition for two different sized handguns, .357 and .9-millimeter, suggesting that Rudaj had either elsewhere in the house, at another location, or at some other time possessed these kind of handguns.  (Tr. p. 9320, lines 2-7) (Emphasis added).

In other words, A.U.S.A. Rodgers is expressing to the Jury that in this case, the mere "suggestion" of possible possession of a handgun, is sufficient evidence to prove beyond a reasonable doubt of this critical element of the § 924 violation.  Any reasonable trier of fact would recognize this as a clear Due Process violation.

Considering Petitioner's § 924(c) conviction was based on conflicting testimonies from known perjurers, A.U.S.A. Rodgers' suggestive remarks about Plaintiff's lawfully owned rifles being "tools of the trade", and the Government's failure to establish a nexus between the handguns and the crime, Plaintiff's Fifth Amendment right to Due Process of Law was violated.

## PLAINTIFF'S FIFTH AMENDMENT RIGHT WAS
## VIOLATED WHEN THE GOVERNMENT WITHHELD EVIDENCE

When the government withholds evidence the defendant is deprived of his/her Due Process Right under the Fifth Amendment. In the instant case, examples of withheld evidence include:

1. Sal Misale's bar was burned to the ground;
2. Mo Sanginiti's cooperating agreements with several prosecutors;
3. The search warrant of Skutariga's business;
4. Analysis of findings concerning whose fingerprints were found on the seized weapons.

The defendants responsible for Plaintiff's due process deprivation are: U.S. Attorneys Kelley and Bharara, A.U.S.A. Rodgers, A.U.S.A. Treanor, and Attorney Kousouros. The Government lawyers are responsible for withholding evidence. Plaintiff's trial Counsel, Kousouros is responsible for failing to request all the evidence.

The Fifth Amendment requires the Government to disclose evidence to the defendant. In **Brady v. Maryland**, 10 L.ed.2d 215 (1963), the Supreme Court held that Due Process requires the prosecution to disclose evidence favorable to an accused upon request when such evidence is material to guilt or punishment.

In **United States v. Bagley**, 87 L.Ed.2d 481 (1985), the Supreme Court held the Government's duty under **Brady** (Supra), arises regardless of whether the defendant specifically requests the material exculpatory evidence. Exculpatory evidence is material if there is a reasonable probability the disclosure of the evidence would have changed the outcome of the proceeding. **Dismone v. Phillips**, 461 F.3d 181, 196 (2nd Cir. 2006).

For example, in the instant case, if trial counsel had all of Sanginiti's cooperating agreements as well as his contradictory statements to law enforcement, counsel would disqualify his credibility. With one of the government's chief witnesses disqualified, the jury may have acquited the Plaintiff. **Bagley**, Id. A reasonable probability is one sufficient to undermine confidence in the outcome.

The government is obligated to disclose exculpatory evidence and information that could be used to impeach government witnesses. **Leka v. Portuondo**, 257 F.3d 89, 104-108 (2nd Cir. 2001) (off-duty policeman's observation would have contradicted testimony of other witnesses).

In particular, impeachment evidence includes an agreement with a government witness for testimony in exchange for favorable treatment in the criminal justice system, especially where the witness's testimony is an important part of the government's case. For example, in the instant case, the government's star witness, Sanginiti, had cooperating agreements with the government which granted him immunity and provided him with minimal sanctions; where as the Plaintiff received a 27 year prison term.

Evidence that was withheld from the defense team included full disclosure of Sanginiti, fingerprints on guns, and the FBI's trip to Plaintiff's home country, Serbia-Montenego. Had this evidence been presented to the jury, Plaintiff most likely would have been acquitted. **United States v. Brunshtein**, 344 F.3d 91, 101 (2nd Cir. 2003) (Suppressed evidence is material when its disclosure would result in a different outcome of the proceedings).

In regard to Sanginiti and in addition to the previously cited perjury statements, his credibility is further minimalized when a

factfinder considers that Sanginiti had numerous cooperating agreements with various district attorneys in the Metropolitan New York City area. See Plaintiff's § 2255 motion, page 6(xiv). Exhibit A. He provided substantial assistance which helped convict several defendants, including Plaintiff. Also, Sanginiti was associated with a homicide of a 12 year old boy. Sanginiti was well rewarded for his testimonies, as he was released from prison immediately after Plaintiff's conviction.

Had Plaintiff's jury known all of Sanginiti's circumstances, they most likely would have had a reasonable doubt of his guilt. **United States v. Perez**, 393 F.3d 457 (2nd Cir. 2004) (Informants must be reliable and their testimonies must be corroborated).

Judge Cote must be held responsible for violating Plaintiff's Fifth Amendment right to Due Process of law; she allowed the false testimony to be elicited.

UNITED STATES DISTRICT JUDGE DENISE L. COTE
COMMITTED JUDICIAL MISCONDUCT WHICH
VIOLATED PLAINTIFF'S FIFTH AND SIXTH AMENDMENT RIGHTS

When Judge Denise L. Cote ordered Attorney James Kousouros to respond to Plaintiff's § 2255 ineffective claims without first providing the Plaintiff an opportunity to respond, she committed judicial misconduct.  Exhibit B.

When the Court received Plaintiff's § 2255 petition, Judge Cote colluded with A.U.S.A. Rodgers to compel Attorney Kousouros to submit an affidavit to Rodgers "that responded to and addressed the ineffective assistance claims" in Plaintiff's § 2255 motion. Before Judge Cote issued her order to Rodgers, she failed to provide Plaintiff with an opportunity to respond to her order. Furthermore, Judge Cote threatened to dismiss Plaintiff's § 2255 motion if he does not waive his attorney-client privilege.  Judge Cote failed to provide any authority that allows her to obtain a response from Attorney Kousouros by soliciting Plaintiff to forego his attorney-client privilege.  Judge Cote effectively violated Plaintiff's right to counsel under the Sixth Amendment.

Judge Cote violated her oath of office under Title 28 U.S.C. § 453 and Article VI § 2.  She acted under the color of law in violation of Title 28 U.S.C. §§ 241 and 242.  By doing so, Judge Cote violated Plaintiff's Due Process of Law under the Fifth Amendment of the United States Constitution.

Furthermore, Judge Cote's order forced Attorney Kousouros to violate American Bar Association's ethic.

"A criminal defense lawyer whose ex-client brings an ineffective assistance of counsel claim may not unilaterally furnish any information about the former client's case to the prosecution, the ABA's ethics committee advised in an opinion released in September. (ABA Standing Comm. on Ethic and Professional Responsibility, Formal Op. 10-456, 7/14/10).

It is highly unlikely that disclosures in response to a prosecution request, before a court-supervised response, will be justifiable under the self-defense exception to the confidentiality rule, the committee warned.

The opinion addressed whether a criminal defense attorney whose former client claims that the lawyer provided ineffective assistance may disclose confidential information to government lawyers before any proceeding on the defendant's claim.

The committee noted that although such early disclosure is highly unusual, sometimes trial lawyers accused of ineffective assistance have assisted the prosecution in advance of testifying or otherwise giving evidence in a judicial proceeding. Commentators have expressed concerns about this practice, the opinion notes.

The committee explained that even though an ineffective-assistance claim ordinarily waives the attorney-client privelege, information about the former client's representation is still protected under ABA Model Rule 1.9(c), which describes a lawyer's duty of confidentiality to former clients, and Model Rule 1.6, which forbids lawyers to disclose any information relating to a client's representation unless the client provides informed consent or an exception in the rule applies.

Waiver of the privilege by bringing an ineffective-assistance claim cannot be viewed as informed consent to disclosure under Rule 1.6, the committee advised it pointed out that Model Rule 1.0(e) defines "informed consent" to mean a person's agreement to a proposed course of conduct after the lawyer has explained the risks and alternatives.

Voluntary disclosure to a prosecutor by a lawyer whose former client claims ineffective assistance will rarely be authorized under the self-defense exception set out in Rule 1.6(b)(5), the committee stated.

In reaching this conclusion, the committee pointed out that an ineffective-assistance claim is not "a controversy between the lawyer and the client," and that the defendant's motion or habeas corpus petition is not a criminal charge or a civil claim against which the lawyer must defend. Thus, the first two prongs of the self-defense exception simply do not apply, it found.

As for the third part of the exception, which allows disclosure "to respond to allegations in any proceeding concerning the lawyer's representation of the client," the committee pointed out that Rule 1.6(b)(5) itself allows disclosure only "to the extent the lawyer reasonably believes necessary" for the purpose of responding to allegations.

Emphasizing that lawyer's belief in the need for disclosure must be objectively reasonable, the committee took the position that only in rare circumstances could trial counsel reasonably believe that prior, ex parte disclosure is necessary to respond to an ineffective assistance claim.

"It is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable." the opinion states.

The committee pointed out that because the extent of this disclosure would be unsupervised by the court, there is a risk that the lawyer would reveal information that could not ultimately be disclosed in an adjudicative proceeding. Moreover, it added, allowing criminal defense attorneys to assist law enforcement authorities by providing them with protected client information may chill future defendants from fully confiding in their counsel.

The committee also pointed out that many ineffective-assistance claims are dismissed well before the trial lawyer would be called to testify, and that if the lawyer's evidence turns out to be required after all the court will determine issues of relevance and privilege.

"Thus, it will be extremely difficult for defense counsel to conclude that there is a reasonable need in self-defense to disclose client confidences to the prosecutor outside any court-supervised setting," the opinion states."

## DAMAGES

The Plaintiff is asking for compensatory, nominal and punitive damages. Damages are based on Plaintiff's losses as identified below:

**COMPENSATORY DAMAGES:**

F.G.I. Holding Corporation  real property

| | | |
|---|---:|---:|
| 836 Morris Park | $525,000 | |
| 625 Crescent Avenue | 400,000 | |
| 33-16 23rd Avenue | 600,000 | |
| | | $1,525,000 |

Plaintiff's Home, 975 Sunset St.                                 230,000

Legal Fees

| | | |
|---|---:|---:|
| Attorney Kousouros | $150,000 | |
| Attorney Feinberg | 140,000 | |
| Investigators | 42,000 | |
| | | 332,000 |

Loss of Salary

$1,000 per week for 7 years                                      364,000

Guns Confiscated                                                   3,650

                                                                2,454,650

**PUNITIVE DAMAGES:**

Treble Damages (3 X $2,454,650)                                7,363,950

**NOMINAL DAMAGES:**                                               1,000

**TOTAL**                                                     $9,819,600

## CONCLUSION

Wherefore, in consideration of the foregoing constitutional arguments, Plaintiff is asking this Court to honor the instant Bivens lawsuit by ordering a jury trial to settle the issues.

Respectfully submitted,

Alex Rudaj, pro se
Reg No. 02381-748
FCI Ft Dix
P.O. Box 2000
Fort Dix, NJ 08640

Dated: September 28, 2011

## CERTIFICATE

I hereby certify, under penalty of perjury under the laws of the United States of America, Title 28 U.S.C. § 1746, that the foregoing Motion or Petition, including any attachments, exhibits and In Forma Pauperis, are true and correct to the best of my knowledge.


## CERTIFICATE OF SERVICE

I hereby certify, under penalty of perjury under the laws of the United States of America, Title 28 U.S.C. § 1746, that true and correct copies of the foregoing Motion or Petition, including any attachments, exhibits and In Forma Pauperis, were inserted in an envelope, first class postage affixed, addressed to the parties below and placed in a mail depository within FCI Fort Dix in accordance with 28 C.F.R. § 540.11.

Clerk of Court
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

X _____
Alex Rudaj, pro se
Reg No. 02381-748
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

Executed and mailed on this __28th__ day of September 2011

EXHIBIT A - 1

Besides  tainting and biasing the jurors, Alex Rudaj is also
effectively denied the effective assistance of counsel at this
critical point of the trial procedure. The 15 minute time limitation
is not a step to ensure that Alex Rudaj has a fair trial under
these circumstances. Rather, it's a constructive denial of counsel.

It gets worse. The trial begins and the government lawyers present
their star witness, Maurizio "Mo" Sanginiti. Sanginiti testified
in one prior trial,  that we know of,  just before
this trial, where A.U.S.A. Treanor, used him as a star witness
in U.S. v . DiPietro, case number 55-02-cr.-1237. Sanginiti was
a codefendant of DiPietro, alleging that he was facing a life
sentence in that case. But, he agreed to testify to get time served,
if he testified in these trials. He also testified in a Grand Jury
proceeding for the Westchester County DA. (Sentencing, case number
02-CR-1237, April 19, 2006, 1:30 p.m. befor Hon. Shirley Whol Kram,
P.3-4. )

Sanginiti was a known lier and perjuror, Tr.p. 1304, ln. 6-7, admits
to lying under oath; Tr.p. 1305, ln. 19-20, admits he was not
truthful with the government at initial meetings. However, A.U.S.A.
Treanor at Sanginiti's sentencing makes false, and perjurious
statements to the Court, Ibid at p.5:

    "He was forthcoming from the first meeting,

5

willing to assist by all means. He was

entirely credible, in our view, based on

the evidence that we've gathered from other

sources. (p. 5, ln. 14-17)

These statements are incredible, and shocking to the conscious
when looking at the evidence.

At Tr.p.1782, ln. 19-20, Sanginiti admits to being a lier, and at
Tr.p. 1837, ln. 16-17, he admits to perjury. And, then at Tr.p.
1840, ln.5-7, he testifies that he spent countless hours preparing
testimony with the government.

Sanginiti, then, after countless hours of preparation with the
government, tells the jury, that he was with Alex, and states he
heard Alex "hit him with barrel of gun," Tr.p. 1570, ln. 1-8. At
Tr.p. 1887, ln. 3-5, he testifies that he met them in early 2002,
but, then changes it to 2001, after consulting with Government.
At Tr.p. 1947, ln. 19, he testifies again they met in spring of
'01'; Tr.p. 1940, ln. 12-25 to p. 1941, ln. 1-13, he again testifies
about the Balampanis beating, and mentions Frank was there. This is
all perjury, and the governement lawyers knew it was perjury.

A.U.S.A. Treanor, elicited testimony from Sanginiti in the DiPietro
trial that Sanginiti did not meet Alex Rudaj until right before

Labor Day 2001. (U.S. v. DiPietro, May 16, 2005, Tr.p.1333, ln. 15-23:

>"This is Mr. DiPietro and Mr. Sanginiti bringing Mr. Perazzo down to Cafe Roma in the Bronx which Mr. Hegarty already testified is the location that he conducted surveillance of Mr. Perazzo and Mr. Bringman on the date of Perazzo's arrest at that location, and Mr. Sanginiti has some testimony about why he was brought down there, about the fact that Mr. Sanginiti and Mr. DiPietro made Mr. Perazzo buy a watch for one of the criminal defendants who frequented the Cafe Roma,"

Tr.p. 1335, ln. 11-15:

>"Q. And how many times do you think you were at Cafe Roma in the Bronx? A. About two or three times. Q. And who were you with, if anyone, aside from Mr. Perazzo on those occasions? A. Mr. Bringman, Mr. DiPietro, myself, Mr. Perazzo, Alex, Nicky, Lenny, and a few guys from the Bronx.

Tr.p. 1337, ln. 14-22:

>"Why was it that you took Mr. Perazzo to the Cafe Roma in the Bronx? A. Well, one was for the reason to try to get some money from overseas and to Albania because Alex had an idea that he can get the money from wherever he had them overseas, Swiss, Switzerland, or France that he could get it to

Albania, and then from Albania to here, that we
were going to take a flight, myself, Mr. Perazzo
and Alex, to try to get this particular deal done."

Tr.p. 1339, ln. 10-19:

"**A.** In the summer of 2001 he recieved a Rolex
watch that myself and Mr. DiPietro made Mr.Perazzo
buy on his credit card to give to Alex. **Q.** And why
did you give, together with Mr. DiPietro, make Mr.
Perazzo buy a Rolex watch for Mr. Rudaj? **A.** To show
good faith,..."

Tr.P.1339, ln. 22-25-p.1340, ln. 1, 19-21:

**Q.** Who is it that knew--did you know the individuals
who you've identified who [see Tr.p. 1336, ln. 4-25-
Tr.p. 1337, ln. 1-4, Ex. #2] who frequented the
Cafe Roma in the Bronx prior to bringing Mr.
Perazzo down there?...[1340, ln. 1] **THE WITNESS:**
No. [ln. 19-20] **Q.** How about Alex? Had you ever seen
Alex before you brought Mr. Perazzo to Cafe Roma?
**A.** I had met him a couple of times through Mr.
DiPietro, yes.

Tr.p.1341, ln. 2-5

**A.** Yes, I remember it clearly. It was Labor Day
weekend, he got arrested, yes. **Q.** Was that 2001?
**A.** Yes, 2001.

The government lawyers knew Sanginiti did not know Alex Rudaj in June of 2001. A.U.S.A. Tim Treanor met with Sanginiti 26 times after a cooperation agreement was made for Sanginiti's testimony in the DiPietro trial. (See Exhibit #3A, Tr.p. 2045, ln. 3-6, Sanginit-Cross at DiPietro trial). And, it was Treanor who asked the questions to estalish the date Sanginiti met Alex Rudaj  at the end of August. Which this was true, See Aff. of Alex Rudaj, ¶ 20.

At line 6, (Tr.p. 1568) "myself, Frankie and DiPietro, getting ready to start game." This is also perjury. Frankie was in Florida on this date.  He then goes on further to say, "Lenny was there," this is again perjury. Lenny was in Italy on this date. Id. at ln. 11-12.

Because the government lawyers knew Lenny was in Italy, at TR.p. 9246, ln. 12-25, 9247, ln. 1-7, A.U.S.A. Rogers in her Summation tells the jury that Sanginiti was [ln. 15] "with Frank Ivezaj" on the date of Balmpanis' beating. She knew this was perjury, and endorses it, aids and abets, subornation of perjury. At ln. 22, she refers to it as "and maybe some others."

At Tr.p. 9246, ln. 25-p. 9246, ln. 1-2, A.U.S.A. Rogers, again adresses and joins in with Sanginiti's perjury, where she directs

the jury to his perjury: "Sanginiti told you that Rudaj was complaining that he had gotten blood on him. Sanginiti said he saw the blood."

A.U.S.A. Rogers knew this to be perjury, because, she knew Sanginiti was not there, and that he did not know Rudaj on that date.

Had Sanginiti been there with Alex, Angelo, Nicky and Louie, Balampanis would undoubtedly have also identified Sanginiti along with the others. At Tr.p. 4380, ln. 23-25-p. 4382, ln. 1-24, [ln. 20-24] Q. do you recall seeing that man present at the scene on June 16, 2001? A.. No. Q. I didn't hear you. A. No.

Balampanis could not identify Sanginiti because Sanginiti was not there.

A.U.S.A. Rogers goes even further, at 9247, ln. 5-6, she endorses and contributes to the Sanginiti perjury where she colludes, "how Rudaj hit him with the barrel of a gun."

First, the government lawyers knew Sanginiti was not there, as proven by the testimony above. Second, they knew, "how Alex..., how he hit him with the barrel of the gun and split the guys face

open." (Tr.p. 1570, ln. 3-4), this perjury that she is referring to as being true, is again subornation of perjury.

The government lawyers knew this was perjury, because they knew there was no evidence to support it to be true. In fact the evidence disproved it.

When Balampanis went to the Police and the FBI, no pictures were taken of Balampanis' face being "split open" to be used as evidence of this assault.

The government lawyers knew in advance of this testimony that this was perjury. This is also established where the government lawyers presented their witness, Dr. Chuang, who worked at Mt. Sinai, Queens hospital on June 16, 2001, in the emergency room. A stipulation to the records was made to the records, prior to trial, as Governemnt Exhibit 561, and 561A, that were then entered into evidence. The only mention of "pistol whipped" [Tr.p. 4071, ln. 18] is from the patient." (Tr.p. 4074, ln. 19-21).

> "Q. Now, what does "blunt" signify to you
> in connection with trauma? A. ...meaning
> no skin was opened up."
> Tr.p. 4077, ln. 24-25-p. 4078, ln. 1-3,
> Dr. Chuang testifying to medical records.

It should also be noted here (Tr.p. 4061, ln. 20-25-p. 4095, ln. 1-16) that the ennuendo used by the government lawyers- "the information you had about the cause of Mr. Balampanis' injuries were that he was pistol whipped and kicked and punched. Is that correct? **A.** Yes. **Q.** And I asked you before if the injuries that you observed that Mr. Balampanis had were consistent with the information you had about the cause. Do you recall me asking you that? **A.** Yes. **Q.** And what was your answer? **A.** Consistent. (Tr.p. 4093, ln. 6-16).

The reference this word play goes to is as follows:

> "Well, yes, the contusion and the nose."
> Tr.p. 4088, ln. 2. Dr. Chaung.

> "**Q.** Is there anything in your-- excuse me when I say "your" is there anything in the diagnosis as it appears in the records that the abrasions or contusions that Mr. Balampanis had was caused by a pistol whipping? **A. There's no--the word pistol whipped doesn't appear on the diagnosis.**"
> Tr.p. 4108, ln. 12-17, Dr. Chaung-Cross.

> Q. Now, when you testified before that-- in response to Mr. Treanor's question that

EXHIBIT A - 9

the injuries you saw were consistent...

when you say something is cosistent,

that doesn't mean that that's  the way

it happened that way. Correct? A. **Correct.**

Tr.p. 4108, ln. 20-25-p. 4109, ln.1-4

Dr.Chaung-Cross.


This testimony and witness by the government proves the governement

knew Sanginiti's testimony was perjury where he says:


"he hit him with the barrel of the gun

and split the guys face open."

Tr.p. 1570, ln. 3-4.


It was the government lawyer's witness that also testified:


"what does "blunt" signify to you in

connection with trauma? A. ...

meaning no skin was opened up."


Then, Dr. Roh, testified for the defense, (prior to A.U.S.A.

Rogers Summation, so she at the least knew this before that point

in time) as an expert witness as follows:


"Q. So you're saying it is not possible

for someone to be pistol whipped without

resulting in a laceration of the skin?

**A.** That is correct.

Tr.p. 8918, ln. 16-18, Dr. Roh-Cross.

Dr. Roh had impeccable credentials to testify as an expert, as to

the injury caused by being pistol-whipped. He had been called as

an expert witness in both State and federal courts, by both DA's

office and on behest of the United States. Tr.p. 8907-8908.

The fact is, Balmpanis "face was not split open" by being pistol

whipped. This was perjury, the government lawyers knew it, but,

they wanted this testimony to be heard by the jury so they could

get a conviction. Regardless of the truth. See Tr.p. 9246, ln.

1-7, where Rogers endorses this perjury.

Chapter 79-PERJURY, title 18 U.S.C. § 1621 et seq, **does not**

exempt Assistant United States Attorney(s), nor their witnesses.

Claim that prosecution witness could not have been telling truth

and that United States District Attorney knew this, both at time

defendant was indicted and time when he was tried, although

inartistically made, charged denial of due process which was

proper  basis for motin under 28 U.S.C. § 2255. U.S. v. Barillas,

(CA2 NY) 291 F.2d 743.

14

The Constitution is writen in the plain english vernacular for everyone to understand. These grounds are basic, fundamental requirements for a fair and trustworthy adversarial procedure. The defense lawyer's actions and omission of action as stated herein, but not limited to these exclusively, are meritorious grounds for reversing the judgment and conviction that was had in violation of the United States Constitution.

**Ground 2.**  5th Amend. U.S. Const. violation of due process of law - **Prosecutorial Misconduct-**

**Supporting Facts:** The prosecutorial misconduct in this case can be set out under 9 headings as follows:

    1. knowing use of false testimony to Grand Jury;

    2. illegal authorization of preplanned illegal search and seizure;

    3. knowing and intentional withholding of 'Brady' and 'Giglio' material;

    4. knowing use of false testimony/perjury to trial jury;

    5. use of false evidence;

    6. deliberate and intentional violation of Court order/ruling/ decree;

    7. endorsement and sanctioning of known   perjury in summations;

    8. obstruction of justice;

    9. false statements to Court.

1. Knowing use of false testimony to Grand Jury:

    At least one Grand Jury witness committed perjury-

"Q...is the statement accurate? "Yes ma'am,

it's accurate," that was not a true answer,

was it? **A**. At that time, no. **Q**.At that time,

no. And that's when you were under oath in

the grand jury. Right? **A**. I believe so, yes."

Tr.P. 2843, ln. 10-16, p. 2967-2968, ln.1-9.
Misale, Cross Tr.p. 2843-2845.

Racketeering Act 3- a. Extortion Conspiracy; b. Attempted Extortion,

found on p. 11-12 of Indictment S3 04 cr. 1110 (DLC), was obtained

by use of this perjury.

"...we have a document, 3514-5 -- which appears

to be the first interview of this witness by law

enforcement when there is no claim of any fear or

anything else on his part, and what he says in that

document, based on his information, is significantly

different than a 302 that is generated in 2004

and again significantly different from what he says

in the Grand Jury." Tr.p. 4178, ln. 18-24. Concerning

Tony Balampanis perjuy to Grand Jury.

On Cross, Balampanis testifies he doesn't remember his Grand

Jury testimony. Tr.p. 4253-4254. It is an obvious cover up for

his false statements and perjury. His memory worked fine for the

government lawyers. See also 4. **knowing use of false testimony/perjury

to trial jury**.

page 6(viii)

What the record does make clear about the Balampanis testimony
is that, the government lawyer, A.U.S.A. Treanor, was aware
of at least "one [statement] that was clearly inconsistent...

> He testified in the Grand Jury that he had
> seen a gesture like he was reaching for a
> gun, but didn't actually see a gun. Then
> he testified he did see a gun." Tr.p. 8479,
> ln. 7-15.

The government lawyers used the Balampanis perjury to the
Grand Jury to get an indictment, and then more to the trial jury
to obtain a conviction. See also 4. **knowing use of false testimony/
perjury to trial jury**.

> "...as well as with the Balampanis/Dimopoulos
> extortion, they didn't just have guns, they
> brandished guns,..." Tr.p. 9322, ln. 21-23,
> A.U.S.A. Rogers Summation to jury endorsing
> Balampanis perjury.

A hearing is required to determine the extent of the government
lawyer's use of perjured testimony and false evidence to the
Grand Jury to obtain the indictment against Alex Rudaj under
S3 04 cr. 1110 (DLC).

2. Illegal authorization of preplanned illegal search and seizure:

EXHIBIT A - 14

the jury may have found a reasonable doubt concerning Racketeering Act 3, and entered a verdict of not guilty.

The government had 302's by Agent Reece and information concerning Maurizio Sanginiti's deal with the Westchester County DA's office. The information goes to the credibility of Sanginiti, which is material to the guilt of Alex Rudaj on the RICO counts. Sanginiti gave extensive testimony concerning the government's theory of a "Rudaj Organization", in fact he was the star witness. Without Sanginiti's testimony there most definitely would not have been a RICO and "Rudaj Organization" for the jury to hear about. His credibility and motivation, along with his history as a witness for every jurisdiction that he gets arrested in, how he has made a career out of breaking the law, then becoming a witness to avoid jail. This information should have been made available to the defense. Had this history, his deal with the Westchester County DA, and the FBI in concert with the A.U.S.A. Tim Treanor and Rogers been made available too for cross, the jury may very well of found a reasonable doubt concerning Alex Rudaj's guilt on the RICO and gun counts.

The government intentionally withheld this information to prejudice the defense and to create their "Rudaj Organization" unhampered with the messy details of the credibility, the mendacity with which this trial is orchestrated.

The government intentionally and willfully withheld the search

EXHIBIT B - 1

Judicial Council of the ___Second___ Circuit

## COMPLAINT OF JUDICIAL MISCONDUCT OR DISABILITY

To begin the complaint process, complete this form and prepare the brief statement of facts described in item 5 (below). The RULES FOR JUDICIAL-CONDUCT AND JUDICIAL-DISABILITY PROCEEDINGS, adopted by the Judicial Conference of the United States, contain information on what to include in a complaint (Rule 6), where to file a complaint (Rule 7), and other important matters. The rules are available in federal court clerks' offices, on individual federal courts' Web sites, and on www.uscourts.gov.

Your complaint (this form and the statement of facts) should be typewritten and must be legible. For the number of copies to file, consult the local rules or clerk's office of the court in which your complaint is required to be filed. Enclose each copy of the complaint in an envelope marked "COMPLAINT OF MISCONDUCT" or "COMPLAINT OF DISABILITY" and submit it to the appropriate clerk of court. **Do not put the name of any judge on the envelope.**

1.  Name of Complainant:     Alex Rudaj  #02381-748

    Contact Address:          FCI Ft Dix, P.O. Box 2000

                              Fort Dix, NJ 08640

    Daytime telephone:        ( ___ ) NONE

2.  Name(s) of Judge(s):      Denise L. Cote

    Court:                    U.S. District Court for Southern District NY

3.  Does this complaint concern the behavior of the judge(s) in a particular lawsuit or lawsuits?

    [ x ] Yes          [  ] No

    If "yes," give the following information about each lawsuit:

    Court:          U.S. District Court for Southern District of NY

    Case Number:    11 Civ. 1782 (DLC)

    Docket number of any appeal to the _____ Circuit:    Not Applicable

    Are (were) you a party or lawyer in the lawsuit?

    [ X ] Party          [  ] Lawyer          [  ] Neither

If you are (were) a party and have (had) a lawyer, give the lawyer's name, address, and telephone number:

| Attorney James Kousouros | and | Attorney Herald Price Fahringer |
|---|---|---|
| 260 Madison Ave, 22nd Fl | | 120 East 56th St, Suite 1150 |
| New York, NY 10016 | | New York, NY 10022 |
| 212-532-1934 | | 212-319-5351 |

4. Have you filed any lawsuits against the judge?

    [  ] Yes          [ X ] No

If "yes," give the following information about each such lawsuit:

Court: _____

Case Number: _____

Present status of lawsuit: _____

Name, address, and telephone number of your lawyer for the lawsuit against the judge:

_____

_____

_____

Court to which any appeal has been taken in the lawsuit against the judge:

_____

Docket number of the appeal: _____

Present status of the appeal: _____

5. **Brief Statement of Facts.** Attach a brief statement of the specific facts on which the claim of judicial misconduct or disability is based.  Include what happened, when and where it happened, and any information that would help an investigator check the facts. If the complaint alleges judicial disability, also include any additional facts that form the basis of that allegation.    See attached statement of facts

6. **Declaration and signature:**

    I declare under penalty of perjury that the statements made in this complaint are true and correct to the best of my knowledge.

(Signature)_____     Date)_June 22, 2011

Page 2 of

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,          :
    Plaintiff                 :
                              :
    v.                        :      Case No. 11 CV 1782 (DLC)
                              :              04 CR 1110 (DLC)
ALEX RUDAJ,                        :
    Defendant                 :
                              :


## STATEMENT OF FACTS


I, Alex Rudaj, swear the folloing is true and accurate to the best of knowledge, experience and beliefs:

Judge Denise L. Cote, has acted partially, with bias and at variance with the Rules for § 2255, F.R.Civ.P. Rule 7-8 and the F.R.Cr.P. 25.2, allowing for a party to an action the opportunity to Respond to an opposing party(s) Motion and/or Request to the Court, prior to or before the Court makes its Decision/Ruling/Final Order.

Judge Denise L. Cote, has acted under color of law in violation of Title 28 § U.S.C. §§ 241 and 242.

Judge Denise L. Cote, entertained ex parte communications with the A.U.S.A. Rogers, to collude and conspire to deny Alex Rudaj certain Civil Rights under color of law, to include, but not limited thereto, a fundamentally fair due process proceeding pursuant to 28 U.S.C. § 2255; to knowingly and intentionally to improperly influence, and interfere with James Kousouros, Esq., Alex Rudaj's paid trial attorney, and witness to testify for Alex Rudaj at a § 2255 hearing, on the stand and under oath, pursuant to due process of law and the Civil Rules and Procedures.

EXHIBIT B - 4

**FACTS:**

On April 29, 2011, A.U.S.A. Rogers, BY HAND delivered a letter and Order to Judge Denise L. Cote, to compel James Kousouros to submit an Affidavit to A.U.S.A. Rogers "that responded to and addressed the ineffective assistance claim" in Alex Rudaj's Motion pursuant to § 2255;

Judge Denise L. Cote, did not allow Alex Rudaj an opportunity to Respond to the letter, before Granting and issuing the Order to James Kousouros;

Judge Denise L. Cote, has demonstrated she is not going to honor her Oath of Office under Title 28 U.S.C. 453, nor her Oath under Article VI § 2, and has violated the public trust, engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts; and is unable to discharge all the duties of office by reason of mental or physical disability.

Judge Denise L. Cote, has threatened Alex Rudaj, to dismiss his § 2255 Motion issues relating to the ineffective assistance of counsel claims, if he does not waive his attorney-client privilege to help the A.U.S.A. Rogers prepare her Response.

Judge Denise L. Cote, has not provided one authority that states Alex Rudaj, is required to provide assistance/help/evidence to the government to help them prepare their Response to his § 2255 Motion. The Rules under § 2255 do not require the Defendant to help the Government prepare their Response; there is no Rule under the Civil Rules of Evidence that requires a litigant to help prepare the

-2-

EXHIBIT B - 5

opposing parties Response to the Complaint.  Alex Rudaj, has not been able to find one Constitutional authority to support Judge Denise L. Cote's partiality, bias, and threats.

In fact, all the Rules of Due Process, fundamentally fair procedures state, there is a Complaint, and a Response.  Then, there is Discovery, Affidavits, and Evidentiary Hearings.  There are no Rules that have been provided to Alex Rudaj by the Court to hold secret proceedings and Discovery.

Judge Denise L. Cote, has violated her Oath of Office under Article VI, §§ 2 and 3, of the United States Constitution.  She has violated her Oath of Office under Title 28 U.S.C. § 453.


## VERIFICATION


I, Alex Rudaj, swear the foregoing is true and accurate, it is not submitted in bad faith, nor is it meant to delay or harass  the courts.  Signed this 20th day of June, 2011, under the pains and penalty of perjury, and pursuant to 28 U.S.C. § 1746.

Alex Rudaj
Reg. No. 02381-748
FCI Fort Dix
Post Office Box 2000
Fort Dix, NJ  08640


Dated:  June 20, 2011


-3-